2026 IL App (1st) 251182-U

No. 1-25-1182

Order filed July 24, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KEITH DANIEL FORTNER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CH 05578 |
| | ) | |
| ILLINOIS STATE POLICE and the COOK | ) | |
| COUNTY STATE'S ATTORNEY, | ) | Honorable |
| | ) | Allen P. Walker, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The denial of plaintiff's request for a Firearm Owner's Identification card was not an abuse of discretion when plaintiff failed to meet his burden under the applicable statute.

¶ 2     *Pro se* plaintiff Keith Daniel Fortner appeals the circuit court's denial of his petition for a

Firearm Owner's Identification (FOID) card by the Illinois State Police (ISP) and to which the

Cook County State's Attorney objected. Fortner argues that the circuit court applied incorrect legal standards, disregarded his evidence, and was biased against him.

¶ 3       We affirm. The circuit court applied the correct statutory standards, considered the evidence before it, and did not abuse its discretion in finding that Fortner failed to satisfy the requirements for relief under section 10 (c) of the Firearm Owners Identification Card Act.

¶ 4                                    Background

¶ 5       On May 6, 2024, Fortner applied to ISP for a FOID card and a concealed carry license (CCL). Each application asked whether he had ever been convicted of a felony or a "domestic battery (felony or misdemeanor)." Fortner marked no in response to both questions on both applications. The FOID application warned that providing false information was a Class 2 felony, and the CCL application warned that false information was "punishable as perjury."

¶ 6       ISP denied Fortner's FOID application based on his 1999 domestic battery conviction. See 430 ILCS 65/8 (West 2024). ISP also denied his CCL application because he was ineligible for a FOID card. See 430 ILCS 66/25(2) (West 2024).

¶ 7       Fortner filed a *pro se* complaint for administrative review, alleging that the 1999 "domestic violence" case had been expunged. He also alleged that he had a valid Wisconsin CCL and attached a copy of the license. After the circuit court ordered him to add the State's Attorney as a party, he named the State's Attorney as a defendant and alleged that he needed a FOID card and "other licenses" to obtain a "career job." He further alleged that the 1999 conviction arose from an incident in which he acted in self-defense and that a court "promised" his "arrest" would be cleared if he completed five years of anger management classes and paid restitution.

¶ 8     The State's Attorney and ISP filed objections, construing the complaint as a petition for relief under section 10(c) of the Firearm Owners Identification Card Act (430 ILCS 65/10(c) (West 2024)). They alleged that Fortner was prohibited from possessing firearms because of his domestic battery conviction. ISP also noted an "outstanding" Michigan warrant for felony burglary and Wisconsin arrests for misdemeanor domestic battery and discharging a firearm within 100 yards of a building. Although the Wisconsin charges were dismissed, the State's Attorney and ISP argued that Fortner's criminal history indicated that he was likely to act in a manner dangerous to public safety and had failed to establish otherwise. See 430 ILCS 65/10(c)(2)-(3) (West 2024).

¶ 9     ISP's sealed records included in the record on appeal contain a June 22, 1999, sentencing order showing that Fortner received one year conditional discharge for domestic battery. The records also reflect a 1984 Michigan arrest for felony burglary with an outstanding warrant and Wisconsin arrests in 1992 for battery domestic battery and in 2022 for discharging a firearm within 100 yards of a building. The Wisconsin cases were dismissed.

¶ 10     The circuit court conducted an evidentiary hearing. Fortner appeared *pro se.* The court first advised Fortner that he bore the burden of proof. Fortner agreed. After he maintained that he had not received evidence of criminal convictions, the court confirmed that he had received the "answer," apparently referring to ISP's "Answer Under Seal." Fortner acknowledged receipt of the answer and asserted that he had not received "physical evidence."

¶ 11     Fortner testified that he had never been convicted of a crime and had been "cleared of all wrongdoing." According to Fortner, the 1999 conviction had been expunged and arose after his younger brother attacked him and he acted in self-defense. Fortner said that the arrest report was falsified and the conviction was "unjust."

¶ 12    Regarding the Michigan arrest, Fortner testified that it occurred in 1982, when he was 16 years old, and that he appeared in juvenile court and was released for lack of evidence.

¶ 13    Fortner testified that the 1992 arrest followed false allegations by his former wife and that the charges were dismissed after he produced evidence. He also testified that he was justified in firing a gun in 2022 because a pit bull attacked him and his puppy. Although he reported the incident to police and was bleeding, he was arrested. He believed there was no reason for the arrest other than race and asserted that he later proved his innocence through documents and audio and video recordings.

¶ 14    Fortner denied posing a "danger to society" and testified that he had lawfully owned firearms in Wisconsin for 30 years. He further testified that he did not disclose the prior incidents on his FOID card application because Wisconsin did not require it and he believed that the matters had been "cleared" from his record.

¶ 15    During ISP's counsel's cross-examination, Fortner testified that he moved to Illinois from Wisconsin on March 1, 2024, held a CCL in Wisconsin for about 13 years, owned numerous firearms, and last discharged a firearm in September 2024 at a range in Wisconsin. He wanted an Illinois FOID card to defend himself and obtain employment. In addition, in 1984, he lived with his aunt in Michigan and was 14 years old. Fortner then testified that he was born on April 16, 1966. Counsel asked whether Fortner was 18 years old when in 1984. Fortner responded that the 1984 arrest date was incorrect and that the arrest had to have occurred in 1982 or earlier. Fortner's mother told him not to return to Michigan because he would be "killed like Emmett Till."

¶ 16    Counsel then asked whether Fortner knew of a warrant for his arrest in Michigan. Fortner responded that the statute of limitations was six years, that he had not been charged or convicted

of "anything," and, although the juvenile court judge told him to return to court, his mother would not allow him. Fortner said that he did not "commit any crime because there is no evidence."

¶ 17    Fortner denied that he had been charged with misdemeanor battery in 1992. He explained that after he caught his then-wife with "another guy," she called the police and lied that Fortner hit her. He appeared before a judge, presented audio on his phone establishing that his wife lied, and the case was dismissed. As to the case involving Fortner's brother, Fortner asserted that it was a "wrongful conviction." There was no trial, and Fortner was unable to obtain an attorney or "anything to prove that the officers [were] lying." He did not believe he had entered a guilty plea because he told the trial court that he defended himself.

¶ 18    In the 2022 incident, a pit bull attacked Fortner and his puppy. He denied that he was charged with discharging a firearm within 100 yards of a building. Fortner believed the record was incorrect and asserted that he had been charged with "firing a firearm for justifiable reasons."

¶ 19    Counsel asked whether Fortner had any evidence that his reputation was such that he was not likely to act in a manner dangerous to public safety. Fortner answered that he did not have "any mental impairments."

¶ 20    During the State's Attorney's cross-examination, Fortner testified that he was born on July 16, 1966, was currently 58 years old, and had no mental health issues that would affect his ability to possess a firearm. Fortner acknowledged that he did not read the entirety of the FOID card and CCL applications; rather, a person at the "training place" completed them. No one asked him the questions on the forms, and he was not informed that providing false information on a FOID card application could be punishable as a Class 2 felony.

¶ 21    As to the 1999 conviction, Fortner testified that his intoxicated brother initiated the altercation and "charged" him. Fortner "tapped" his brother on the head with a baseball bat twice. Although Fortner had a firearm, he did not discharge it and was arrested for "nothing." Someone approached Fortner in the "bullpen" and stated that he would be released if he signed papers. No one explained the papers to him. Fortner testified that the judge said that "they would expunge it" if Fortner attended an anger management class for five years and paid restitution. Although Fortner "signed the paper," which admitted his guilt, he was not guilty and signed because he was an "idiot at that time." He completed his sentence in that case.

¶ 22    Fortner wanted a FOID card to defend himself and for employment. The "only thing" on his record was from "bad police" and a "bad wife." He owned six firearms and, at the time of the hearing, kept two by his bed, but locked them up when his grandchildren visited. He acknowledged that he brought his firearms when he moved to Illinois because he thought he would obtain a FOID card "right away."

¶ 23    During questioning by the court, Fortner acknowledged that he did not know what document he signed in 1999 and did not know if he "was pleading guilty." As for the 1984 matter, he appeared before a juvenile court judge, and the arrest occurred in 1982 because he was a minor. When he was arrested, he was taken to a juvenile facility and then to court, where a judge told him that he needed to return for a court date. But his family was afraid he would be "railroad[ed]" or killed and took him "straight back" to Chicago.

¶ 24    The court denied Fortner's petition for relief. The court first noted that Fortner met the requirements of section 10(c)(1) of the Act because more than 20 years had passed since his 1999 domestic battery conviction. The court concluded, however, that Fortner had not satisfied his

burden under section 10(c)(2) and (3), citing his criminal history, an outstanding warrant arising out of his 1984 arrest for burglary, arrests for domestic battery and discharging a firearm within 100 yards of a building, and a conviction for domestic battery. The court discounted Fortner's testimony that he knew he had to disclose prior convictions and arrests and that he did not return to Michigan on his mother's instructions. The court further noted that Fortner brought firearms to Chicago without an FOID card.

¶ 25 The court concluded that Fortner failed to demonstrate that he was not a danger to the community or public safety. The court further found that Fortner did not meet the requirements of section 10(c)(3), determining that the reinstatement of Fortner's "firearm rights" was not in the public interest because Fortner was unqualified to possess a firearm. Finally, based on Fortner's failure to satisfy the requirements of sections 10(c)(2) and 10(c)(3), the court found that granting relief would be contrary to federal law under section 10(c)(4).

¶ 26 On appeal, Fortner contends that the circuit court applied the wrong legal standards, ignored his evidence, and was biased against him.

¶ 27                                        Analysis

¶ 28 Our review is hindered by Fortner's failure to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which governs the form and content of appellate briefs. His briefs contain no citations to the record and fail to present coherent legal arguments supported by relevant authority in violation of Rule 341(h). See Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020). Arguments that do not comply with Rule 341(h)(7) may be rejected for that basis alone. *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 29 Fortner attached documents to his opening brief that are not part of the record on appeal. These materials are not properly before this court and cannot be considered. See *People v. Mehlberg*, 249 Ill. App. 3d 499, 532 (1993) ("A reviewing court must determine the issues before it on appeal solely on the basis of the record made in the trial court.").

¶ 30 Although dismissal would be within our discretion, we decline to do so because Fortner challenges the denial of relief under section 10(c) and we have the benefit of appellees' briefs. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 31 Under the Act, an applicant may petition the circuit court for relief from the denial of his or her petition. 2023 IL App (2d) 220434, ¶ 62; see also 430 ILCS 65/10(a) (West 2024). The applicant bears the burden to satisfy section 10(c). *Awkerman v. Illinois State Police*, 2023 IL App (2d) 220434, ¶ 62. "At the hearing, the court shall determine whether substantial justice has been done." 430 ILCS 65/10(b) (West 2024); see also *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 40 (section 10(c) "relieves an offender of some of the consequences of a conviction and extends a measure of forgiveness by finding, after an individualized hearing, that the offender no longer poses a risk to public safety").

¶ 32 Section 10(c) permits relief only if the applicant establishes, to the court's satisfaction, that each statutory requirement has been satisfied. Because the Act vests the circuit court with discretion, we review its decision for an abuse of discretion. *Brown v. Illinois State Police*, 2021 IL 126153, ¶ 49; see also *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 40 ("A reviewing court obviously cannot review *de novo* whether a petitioner has established the factors 'to the court's *** satisfaction.' "). A circuit court abuses its discretion when its ruling is arbitrary or fanciful, or one that no reasonable person would adopt. *Brown*, 2021 IL 126153, ¶ 49.

¶ 33    The circuit court did not abuse its discretion in finding that Fortner failed to satisfy is burden under section 10(c). Fortner denied ever having been convicted of a crime and attributed his criminal history to 'bad police" and a "bad wife." He challenged the accuracy of the Michigan records, claimed his domestic battery conviction was unjust, and maintained that his later arrests were either fabricated or justified. He acknowledged that he owned multiple firearms, kept two by his bedside, and moved those firearms to Illinois before obtaining a FOID card.

¶ 34    The circuit court's analysis focused on whether Fortner satisfied his burden under sections 10(c)(2) and 10(c)(3), relying on (i) the outstanding Michigan warrant, (ii) the domestic battery conviction, (iii) the additional arrests for battery related to domestic abuse and for discharging a firearm within 100 yards of a building, (iv) failure to disclose his criminal history on his applications, and (v) his possession of firearms in Illinois without a FOID card.

¶ 35    On this record, we cannot say that the court abused its discretion in concluding that Fortner failed to establish that he was not likely to act in a manner dangerous to public safety or that granting relief would serve the public interest.

¶ 36    Fortner's difficulty was not his criminal history but his refusal to acknowledge it. Section 10(c) afforded him an opportunity to explain the circumstances surrounding his conviction and arrests and demonstrate that he no longer posed a public safety risk. Instead, he denied the conviction, the arrests, and the obligation to disclose them. The circuit court was entitled to view lack of candor as bearing on credibility, public safety, and the public interest.

¶ 37    Fortner argues that defendants have the burden of proof. They did not. Section 10(c) squarely places that burden on the applicant. *Awkerman*, 2023 IL App (2d) 220434, ¶ 62. To the extent that Fortner argues that he did not receive "any evidence" of "criminal prosecutions" or

convictions, he acknowledged at the evidentiary hearing that he received the "answer" filed, that is, ISP's business records filed under seal.

¶ 38     Fortner also asks us to reweigh the evidence and reject the court's credibility determinations. The law prohibits us from doing so. The circuit court was in the best position to observe the testimony, assess credibility, and weigh the evidence. See *Fox v. Heimann*, 375 Ill. App. 3d 35, 46 (2007). Therefore, this court will not substitute its judgment for that of the trier of fact on questions involving witness credibility or the weight afforded to evidence. See *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 39     Fortner also seeks damages for "emotional distress" and financial "ruin." Because he cites no authority supporting that claim, it is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (appellant's contentions must be supported by citation of supporting authorities). In his reply brief, Fortner further argues, for the first time, that "gun laws" were enforced "against him in an unconstitutional manner. Arguments raised for the first time in a reply brief are forfeited. *Id*. Even overlooking forfeiture, Fortner cites no facts or authority in support of this claim.

¶ 40     Finally, Fortner argues that the circuit court refused to consider additional evidence he submitted after judgment. The circuit court entered its final order on June 16, 2025, and Fortner filed his notice of appeal on June 10. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); *People v. Bailey*, 2014 IL 115459, ¶ 8 (generally, circuit court loses jurisdiction 30 days after entry of final judgment). The record reflects that the court denied Fortner's motion to supplement the record because no supplement had been filed.

¶ 41     Affirmed.